IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NEGUSSE P. STALEY,
    Plaintiff,

vs.                                      Case No.: 5:13cv25/RS/EMT

WARDEN C. HALLEY, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court on Defendants' Motion to Dismiss (doc. 34). Plaintiff responded in opposition to the motion (doc. 37).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that Defendants' motion should be granted, and this case dismissed.

I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Negusse P. Staley ("Staley"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se, commenced this action on April 20, 2012, by filing a civil rights complaint under 42 U.S.C. § 1983 in the Circuit Court in and for Leon County, Florida (*see* doc. 3, attached Complaint). The case was removed to the Tallahassee Division of this court (doc. 1), and then transferred to the Panama City Division (doc. 19). Now pending is Inmate Staley's Second Amended Complaint (doc. 14). Staley sues Warden Halley and Captain Herring, who were employed with the FDOC at Gulf Correctional Institution ("Gulf C.I."), claiming Captain Herring used excessive force by exposing him to the residual effects of the use of chemical agents on other inmates, in

violation of the Eighth Amendment (*see* doc. 14 at 5–9).[1] Staley alleges Warden Halley was notified of the alleged Eighth Amendment violation, but failed to take corrective action (*id.*). Staley additionally claims that Herring violated his First Amendment rights by threatening to retaliate against him if he filed grievances regarding the Eighth Amendment issue (*id.*). As relief, Staley seeks compensatory and punitive damages, and an injunction enjoining Halley and Herring from retaliating against him for filing this lawsuit (*id.* at 10).[2]

Defendants waived service of process (docs. 32, 33). On October 23, 2013, they filed a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 34). As grounds for the motion, they contend Staley failed to properly exhaust his administrative remedies prior to filing this lawsuit, as required under 42 U.S.C. § 1997e(a) (*id.* at 11–17). Defendants additionally argue that Staley's allegations substantively fail to state a claim upon which relief can be granted (*id.* at 4–11). Staley responded in opposition to the motion to dismiss, and submitted supporting documentation (doc. 37).

II.     LEGAL STANDARDS

The Prison Litigation Reform Act ("PLRA"), title 42 U.S.C. § 1997e, *et seq.*, provides in relevant part that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See* Booth v. Churner, 532 U.S. 731, 739 (2001); *see also* Porter v. Nussle, 534 U.S. 516, 524–25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Parzyck v. Prison Health Serv., Inc., 627 F.3d 1215, 1217 (11th Cir. 2010); Alexander v. Hawk, 159 F.3d 1321, 1325–28 (11th

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[2] Staley's initial complaint named the Secretary of the FDOC as the sole Defendant (*see* doc. 3, attached Complaint). Staley subsequently added Warden Halley, Captain Herring, and several other Defendants (doc. 7), but he then dropped all Defendants except Halley and Herring (doc. 14).

Cir. 1998).³ The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. Booth, 532 U.S. at 741; *see also* Zolicoffer v. Scott, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999), *aff'd*, 252 F.3d 440 (11th Cir. 2001). The requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *See* Booth, 532 U.S. at 741 n.6; *see also* McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."); Alexander, 159 F.3d at 1325. Moreover, the PLRA requires "proper exhaustion," so that the agency addresses the issues on the merits. Woodford v. Ngo, 548 U.S. 81, 92 (2006); *see also* Woodford, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). Failure to have properly exhausted administrative remedies "is tantamount to failure to have stated a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (*overruled on other grounds* by Jones v. Bock, 549 U.S. 199, 215–16 (2007)). Therefore, a complaint is subject to dismissal if the court determines that a plaintiff failed to exhaust his administrative remedies with respect to his claims prior to filing suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000); Alexander, 159 F.3d at 1325–26.

Florida regulations provide a three-step grievance process within state institutions that includes an informal grievance, formal grievance, and appeal to the Office of the Secretary of the

---

³ The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits. Porter, 534 U.S. at 524. In Alexander, the Eleventh Circuit noted the following seven policy reasons favoring exhaustion:

(1) to avoid premature interruption of the administrative process;
(2) to let the agency develop the necessary factual background upon which decisions should be based;
(3) to permit the agency to exercise its discretion or apply its expertise;
(4) to improve the efficiency of the administrative process;
(5) to conserve scarce judicial resources;
(6) to give the agency a chance to discover and correct its own errors; and
(7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

Alexander, 159 F.3d at 1327 (quoting Kobleur v. Group Hospitalization and Med. Servs., Inc., 954 F.2d 705, 712 (11th Cir. 1992)).

Case No.: 5:13cv25/RS/EMT

FDOC.  *See* Fla. Admin. Code  rr. 33-103.005 (eff. Jan. 31, 2010), 33-103.006 (eff. Mar. 25, 2008), 33-103.007 (eff. Mar. 25, 2008).  If an inmate is filing a certain type of grievance, such as a grievance of reprisal or grievance of a sensitive nature, he may bypass use of an informal grievance and begin his complaint with a formal grievance, submitted at the institutional level, and the grievance will be reviewed by the warden or assistant warden.  *See* Fla. Admin. Code r. 33-103.006(3)(c), (d) (eff. Mar. 25, 2008).  If the inmate is dissatisfied with the result of the formal grievance (for example, if it is denied), the inmate may obtain further administrative review by submitting an appeal to the Office of the Secretary.  Fla. Admin. Code r. 33-103.007.  Additionally, an inmate filing a grievance of reprisal or grievance of a sensitive nature may bypass the informal and formal grievance procedures, and file a direct grievance with the Office of the Secretary.  Fla. Admin. Code  r. 33-103.007(6) (eff. Mar. 25, 2008).  When submitting a direct grievance to the Secretary's Office, the inmate may bypass the grievance logging/tracking process at the institution, and submit the direct grievance in a sealed envelope to be placed in the institutional bulk mail that is mailed daily to the Secretary's Office.  *See* Fla. Admin. Code. rr. 33-103-007(6)(a)3., 33-103-006(8)(e) (eff. Mar. 25, 2008).

In Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust.  The court held that the defense of failure to exhaust should be treated as a matter in abatement and not an adjudication on the merits.  *Id*. at 1374–75.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting Bryant, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  Bryant, 530 F.3d at 1374–75 (citation and internal quotation omitted).  Where exhaustion is treated as a matter in abatement and not an adjudication in the merits, it is proper for the district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties have sufficient opportunity to develop a record.  *Id.* at 1376.

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps.  Turner, 541 F.3d at 1082.  First, the court looks to the factual allegations in Defendants' motion, and those in Plaintiff's response, if any.  *Id*.  If they conflict, the court accepts Plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure

to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

III.  ANALYSIS

The following facts related to the exhaustion issue are undisputed for purposes of deciding Defendants' motion to dismiss. Staley filed an informal grievance directed to Warden Halley's office, dated March 31, 2012, complaining that over the past year, and specifically on March 26, 29, and 30, 2012, he was subjected to the residual effects of chemical agents used on other inmates housed in a different wing of H-dormitory (doc. 14, Second Amended Complaint ¶¶ 1–9; doc. 37, Ex. D, Inmate Request). Staley, who was housed in H-3, complained that every time an inmate housed in H-1 was sprayed with chemical agent in his cell, an officer temporarily turned off the exhaust fan in H-1, which caused the chemical agent to disburse to H-2 and H-3 (*id.*). Staley complained that the officer's conduct, which Staley characterized as a use of excessive force, caused him to suffer congested breathing and watery eyes (*id.*). On April 6, 2012, the institutional inspector spoke to Staley regarding the issue raised in his grievance (Second Amended Complaint ¶¶ 10–13; doc. 37, Ex. C. Affidavit of Negusse P. Staley ¶ 23). On April 9, 2012, Defendant Herring advised Staley of the following:  (1) he should not write grievances regarding matters that did not concern him, because he could be placed in confinement and sprayed with chemical agents; (2) he (Herring) was the officer who ordered the exhaust fan in H-1 to be temporarily turned off when chemical agents were applied in H-1; (3) he (Herring) did not want to see one more piece of paper with Staley's name on it; and (4) regardless of whether Staley wrote the warden or the Office of the Secretary, he (Herring) would find out and "get [Staley] sprayed" (Second Amended Complaint ¶¶ 14–21; Staley Aff. ¶ 25). Defendant Herring denied Staley's informal grievance on April 9, 2012 (Second Amended Complaint, Ex. D, Inmate Request). Officer Pippen delivered Herring's written response to Staley on April 18, 2012 (Staley Aff. ¶ 38). Staley did not file any other grievances, and instead commenced the instant lawsuit on

April 20, 2012. Staley was transferred from Gulf C.I. on or about August 29, 2012 (Staley Aff. ¶ 68; *see also* doc. 34, Certificate of Service).

On these facts, it is clear that Staley failed to exhaust his administrative remedies prior to commencing this lawsuit on April 20, 2012. This finding alone, however, does not mandate dismissal of this action. The Eleventh Circuit has held that "a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,'" and in such cases "the exhaustion requirement as to the affected parts of the [grievance] process" may be lifted. Turner, 541 F.3d at 1085. A remedy is deemed "unavailable" when "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Id*. (citing Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available.") and Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008) (noting that an inmate claiming a First Amendment violation based on retaliation for a complaint about prison conditions must show that the discipline "would likely deter a prisoner of ordinary firmness from complaining")).

As justification for his failure to exhaust the administrative grievance process, Staley argues the process was effectively unavailable. He asserts he was "greatly hesitant" to pursue grievances at the institutional and Central Office levels due to Defendant Herring's threat of retaliation (Second Amended Complaint ¶ 22; Staley Aff. ¶ 26). Defendants contend additional administrative remedies were available to Staley even if he feared retaliation by Herring (doc. 34 at 13–15). They argue that the FDOC grievance procedure allowed Staley to file a grievance of reprisal directly to Herring's highest supervisor at Gulf C.I., namely, the Warden or Assistant Warden, pursuant to Fla. Admin. Code. r. 33-103-006(3)(c) (*id.*). Defendants additionally contend Staley's claim of intimidation is inconsistent with the fact that he filed the instant lawsuit just days after Herring allegedly threatened him (doc. 34 at 15). Defendants contend, and Staley does not dispute, that Staley knew that officials at Gulf C.I. would be aware he was filing a lawsuit, because his legal mail was subject to examination

prior to mailing, pursuant to Fla. Admin. Code. r. 33-210.102(8)(g) (doc. 34 at 15).[4] Thus, as Staley was aware, Gulf C.I. staff would have learned of his written complaint and could have easily informed Herring of such, and Herring could have carried out his threat to "spray" Staley if he filed any more written complaints.

Based upon the undisputed facts, and viewing the disputed facts in the light most favorable to Staley, the undersigned concludes Defendants have satisfied their burden of proving that Staley failed to properly exhaust available administrative remedies prior to filing his federal lawsuit. Even if Herring's threat would deter a similarly situated inmate of ordinary firmness from filing a grievance at Gulf C.I., it would not deter an inmate from bypassing Gulf C.I. officials altogether and submitting a direct appeal to individuals in positions of greater authority within the FDOC system, specifically, the Office of the Secretary,[5] especially because Staley could have bypassed the grievance logging/tracking process at Gulf C.I.. Thus, his fear of retaliation by Herring if he filed a direct grievance with the Office of the Secretary was not objectively reasonable and, correspondingly, insufficient to render the administrative grievance procedure effectively unavailable.

---

[4] Rule 33-210.102 provides, in relevant part:

> Inmates shall present all outgoing legal mail unsealed to the mail collection representative to determine, in the presence of the inmate, that the correspondence is legal mail, bears that inmate's return address and signature, and that it contains no unauthorized items. Only the address may be read to determine whether it is properly addressed to a person or entity identified in subsection (2) of this rule. . . . If the outgoing mail is legal mail and it contains no unauthorized items, the mail collection representative shall stamp the document(s) to be mailed and the inmate's copy, if provided by the inmate, "Provided to (name of institution) on (blank to insert date) for mailing." The mail collection representative shall then have the inmate initial the document(s) next to the stamp and have the inmate seal the envelope in the mail collection representative's presence.

Fla. Admin. Code. r. 33-210.102(8)(g)

[5] In <u>Hemphill</u>, one of the cases upon which the Eleventh Circuit relied in <u>Turner</u>, the Second Circuit noted the following, in rejecting prison officials' argument that the fact that the inmate sent a letter to the warden meant he was not sufficiently frightened as to render normal grievances procedures unavailable:

> [I]t should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of "ordinary firmness" from <u>filing an internal grievance</u>, but not from <u>appealing directly to individuals in positions of greater authority within the prison system</u>, or to external structures of authority such as state or federal courts.

380 F.3d at 688 (emphasis added).

IV.	CONCLUSION

Additional administrative remedies were available to Staley prior to his commencing the instant lawsuit. Further, the threat of retaliation by Defendant Herring would not deter a reasonable inmate of ordinary firmness and fortitude from pursuing a direct grievance to the Office of the Secretary, and thus did not render that administrative remedy effectively unavailable. Therefore, Defendants' motion to dismiss should be granted, and this action dismissed without prejudice for Staley's failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a).

Accordingly, it is respectfully **RECOMMENDED**:

1.	That Defendants' motion to dismiss (doc. 34) be **GRANTED**.

2.	That this case be **DISMISSED without prejudice** for Plaintiff's failure to exhaust available administrative remedies, and the dismissal qualify as a dismissal under 28 U.S.C. § 1915(e)(2)(b)(ii).

3.	That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 31st day of January 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**